## Lawrence, et al. v. Fielder.

(Decided December 19, 1919.)

### Appeal from Shelby Circuit Court.

1. Joint Tenancy—Co-tenant—Lease of Premises.—A joint tenant can not, without special authority, bind his co-tenant for the lease of the entire premises.

2. Landlord and Tenant—Action by Lessee Against Lessor.—Where a lessor refuses to place a lessee in possession and declines to carry out the terms of the lease, the lessee may recover in an action the difference between the price he agreed to pay and the actual rental value of the property, and such other special damages as he has sustained as a proximate consequence of the breach.

3. Landlord and Tenant—Action by Lessee for Breach of Contract.—In a suit by the lessee to recover damages in such cases he need not allege or prove any effort to rent other land or engage in other occupations, the recovery not being for loss of time or services, but as damages for the breach of contract for the use of the specific property.

4. Landlord and Tenant—Action by Lessee for Breach of Contract.—To enable the jury to arrive at the value of a lease which the lessor refuses to carry out, it is competent for the lessee in a suit for damages to prove the value and adaptability of the premises for the purposes for which the lease was made, and the jury, in fixing such value, are not confined to the mere opinion of witnesses without any facts being given upon which to base their opinion.

BECKHAM & GILBERT for appellants.

E. H. DAVIS and BEARD & PICKETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to October 20, 1916, the appellants, Mrs. M. A. C. Lawrence and her sister, M. E. Carrithers, who were defendants below, were the joint owners of a farm near Shelbyville, in Shelby county, containing 320 acres. On that day the defendant, M. E. Carrithers, executed to appellant and plaintiff below, Joe Fielder, a written lease whereby the farm was let to him for one year beginning March 1, 1917, and ending March 1, 1918. The lease was signed by the lessee and by the lessor, Miss Carrithers, who also signed the name of her joint owner, Mrs. M. A. C. Lawrence. The rent agreed to be paid was $1,900.00. The lease specified the character of crops and the particular land upon which each was to be grown and the way in which the lesse should use other portions of the premises.

At the time of the execution of the lease Mrs. Lawrence was in Virginia, to which place she had gone on September 28 prior thereto. She returned from that visit on November 2, following, and expressed great dissatisfaction over the leasing of the farm. She and her sister finally refused to give the lessee possession, and absolutely repudiated the lease. This suit was thereafter filed by the lessee, Fielder, to recover damages for the breach of the lease contract, and upon trial there was a verdict in his favor for $1,200.00, upon which judgment was rendered, and defendants' motion for a new trial having been overruled, they prosecute this appeal.

Before taking up the grounds urged for a reversal it might be well to a proper understanding of the case to state some facts appearing in the record. At the time of the visit of Mrs. Lawrence to the state of Virginia a prospective purchaser of the farm held an option on it which would expire between the first and twentieth of October. In anticipation of his probable purchase of the place under the option Mrs. Lawrence executed to her sister, Mrs. Carrithers, a power of attorney authorizing the latter to execute in the name of Mrs. Lawrence a deed to the farm in the event a sale thereof was made before her return. Nothing was said in that power of attorney with reference to leasing the farm. It is shown, however, that Mrs. Lawrence, prior to her departure, had offered to lease it to another for the sum of $1,800.00 if the sale of it should not be consummated.

Shortly after her return from Virginia the place was sold for the sum of $200.00 per acre, but not to the holder of the option, since it expired without his exercising his right thereunder.

The grounds urged against the propriety of the judgment in the motion for a new trial are (1) insufficient evidence and excessive damages; (2) incompetent evidence admitted and competent evidence refused; (3) proper instructions refused and improper ones given.

Ground (1) may be subdivided into (a) that the evidence is insufficient to sustain a verdict for any amount against Mrs. Lawrence, since it is claimed that she was not bound by the lease because she gave no authority to her sister to execute it, and the latter as joint tenant could not bind her upon a lease of the joint property, and (b) that if the first position is incorrect, the verdict against both defendants is excessive and not sustained by sufficient evidence.

Considering the first subdivision (a): It is admitted as a correct principle of law that the lease of joint property by one or more of the joint owners is not binding upon the other joint owner or owners who did not join in the lease or consent to its execution. Geary v. Taylor, 166 Ky. 501. The issue as to whether the defendant, Miss Carrithers, had authority from her sister and joint owner, Mrs. Lawrence, to bind the latter upon the lease was submitted to the jury by an appropriate instruction, and we think there was not only sufficient evidence to authorize that instruction, but it was likewise sufficient to uphold the verdict which found the existence of such authority. It is true that Mrs. Lawrence in her testimony denied that she had ever given her sister any such authority, although she executed the power of attorney to the latter for the sale of the premises. We have seen that there was testimony to the effect that just prior thereto Mrs. Lawrence had offered to lease the premises, which fact shows her willingness to execute a lease provided the farm was not sold. Miss Carrithers does not deny but that she had authority from her sister to execute the lease, although she was repeatedly asked the specific question which could have been effectually answered by either "yes" or "no." Her testimony upon this point, as disclosed by the record, is: "Q. Had Mrs. Lawrence given you any authority to rent the farm before she left? A. She always said, 'I want to sell'."

The answer was objected to and the appellee moved the court to require a direct answer, whereupon the court ordered the stenographer to read the question to the witness, which was done, and she answered: "Well, as I said, she always spoke of it; she wanted to sell instead of renting it." The court then admonished the witness to give a responsive answer to the question by saying to her: "You can answer that 'yes' or 'no,'" whereupon the witness said: "I do not think we really—I do not think she did." This was all that the attorneys and the court were able to make her say in response to the direct question.

Facts are sometimes as firmly established by the manner of the witness in giving his testimony (including his hesitancy to make appropriate answers to proper questions) as if done by positive and direct answers. It is this feature of the conduct of trials that gives juries and trial courts better opportunities to determine the facts than are afforded appellate courts. This fact is universally recognized by this and other courts of review.

It must not be overlooked that an active participant in negotiating as well as executing the lease was the husband of Mrs. Lawrence, whom we can not believe would have consented to the lease and have been so active in bringing it about had the wife been openly opposed to it. While this fact is by no means conclusive, it is a circumstance which, together with other evidence, may be considered in determining the truth of the matter. The court properly overruled the motion to direct the jury to return a verdict in favor of Mrs. Lawrence.

Briefly considering subdivision (b) of this ground, there was evidence that the plaintiff had sustained special damages on account of the breach of the contract in the sum of $300.00, $100.00 of which was incurred in relieving himself of a contract subletting a part of the premises, and the remainder in expenses in obtaining a residence for himself and family, and in an effort to induce the defendants to carry out their contract, all of which are legitimate items of damage upon a breach of this character of contract, as we shall hereafter see. The measure of damages for the refusal of a lessor to deliver possession of the leased premises to the lessee is the difference between the consideration agreed to be paid and the actual value of the lease at the time possession is to be given. This rule for the measurement of damages

in such cases, as well as the one allowing special damages, is thus stated in the case of Devers v. May, 124 Ky., 387:

"We therefore again declare that when a valid contract for the lease of a farm is entered into, and the lessor refuses to place and keep the lessee in possession according to the terms of the lease, the measure of damages the lessee is entitled to recover for the breach of the contract is the difference between the price he agreed to pay and the actual rental value of the property, and, the facts authorizing it, the lessee in the same action may recover such special damages as he has sustained. Nor is it necessary to entitle the lessee to recover general or special damages that he should allege or prove any effort upon his part to rent other land, or to engage in other occupations, because the recovery is not sought on account of loss of time or services, but as damages for the breach of a distinct contract for the use and possession of specific property."

Other cases from this court wherein the same question was considered are Smith v. Phillips, 16 Ky. Law Rep. 615, and Geary v. Taylor, *supra*. Under this rule, incorporated by the court in its instructions, the jury found in favor of the defendant as general damages the sum of $900.00, and this, with the special damages, made the total amount of the verdict, which we think they were authorized to do under the testimony, and further that the verdict is not excessive.

The alleged incompetent evidence complained of by ground (2) was testimony introduced by defendant showing the productiveness of the leased premises, and the adaptability of certain portions of them for the particular crops agreed to be planted thereon, as well as the value of the remaining land for pasturage. It is insisted that such evidence was improper, under the above rule for the measurement of damages, but we think not. The jury could not well arrive at an intelligent conclusion without knowing something of the nature of the premises involved, including their productiveness as well as their adaptability to the purpose for which they were leased, and so in the Geary case, *supra*, where the rental was for the purpose of pasturage only, this court in dealing with the exact question now under consideration, said:

"In determining the rental value of the land, plaintiff will be permitted to introduce evidence tending to show

its value for pasturage purposes, but will not be permitted to show the probable profits which he would have realized from the use of th eland."

There was no issue of profits submitted to the jury in the court's instruction, and we think the complained of testimony had no further effect than to place before the jury the suitability of the rented premises for the purposes stated in the lease, and from which the jury was authorized to arrive at its conclusions and not accept the mere opinions of witnesses as to the value of the lease without stating any facts upon which such opinions were based. The testimony complained of as to the probable yield of the leased premises and its possible market value, if erroneousy admitted, could not be substantially prejudicial in view of all the facts and the instructions of the court.

The alleged competent evidence which the court refused, and of which complaint is made under this ground, was a letter written by plaintiff to Miss Carrithers on December 18 following the date of the lease, in which she informed him that her sister declined to abide by its terms, and that she was mistaken as to her authority to subscribe her sister's name to it. It is difficult for us to see what bearing the letter could have on the merits of the case, since it is admitted by every one that Mrs. Lawrence did decline to be bound by the lease, and refused to deliver possession to defendant. Indeed that fact furnishes the only foundation for this lawsuit. If it should be insisted, as intimated by counsel, that the letter was notice to the plaintiff soon enough for him to arrange for other premises, it would then be of no service to defendants, since he was not required to minimize his damages by procuring other premises. The suit is not to recover for loss of time or services, but for damages for breach of a distinct contract for a specific thing, to the entire benefit of which defendant was entitled, independent of any other contracts of a similar nature which he either had or might enter into. Devers v. May, *supra*.

Briefly considering the (3) ground, the court, on its own motion, gave to the jury instructions No. 1 and 2, and defendants offered Nos. 3, 4 and 5. Number 3 was a peremptory instruction to find for defendant Lawrence, and No. 4 told the jury that it was the duty of plaintiff to use reasonable diligence to find another place; that if

he failed to do so the law was for the defendants and they should so find.

Number 5, offered by the defendants, directed the jury to assess in favor of plaintiff, if they found for him, the difference between the reasonable rental value of the premises for the year between March 1, 1917, to the same date 1918, for the use and purposes for which they were rented, and the rental agreed to be paid. We have already considered the impropriety of instructions Nos. 3 and 4, and the issue submitted in instruction No. 5 was substantially incorporated in instructoin No. 2 given to the jury. Upon this point it said:

"The jury should find for the plaintiff the difference, if any, between the agreed rental price for the year 1917 of the farm described in the evidence and its fair reasonable rental value for the uses and purposes stated in the contract in the year 1917," &c.

We think this a correct statement of the law, and the jury could not have been misled into fixing the rental value of the premises as of any other date than when possession was due.

Finding no error prejudicial to the substantial rights of the defendants, the judgment is affirmed.