**CITY OF ASHLAND, Kentucky, a Municipal Corporation, Appellant,**

v.

**C. C. PRICE et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 12, 1958.

A. W. Mann, Arthur T. Bryson, Jr., Ashland, for appellant.

S. S. Willis, E. Poe Harris, Ashland, for appellees.

STANLEY, Commissioner.

The City of Ashland is prosecuting this action to condemn certain property for expansion of its waterworks plant. KRS

94.680 et seq. The appellees, C. C. Price et al., were the owners, and the appellee Mae Spriggs was the lessee of the property. When the suit was instituted there was an unexpired term of four years of her five year lease. Under instructions authorizing separate awards, a verdict of $41,500 was returned for the landowners and $9,600 for the lessee. Judgments for both sums were accordingly entered. The city appeals.

It seems sufficient to say that there was evidence to sustain the verdict of $41,500 as the fair market value of the property. The evidence was also sufficient to sustain the verdict for the lessee if she is entitled to recover the entire difference between the aggregate of her liability under the lease at the rate of $150 a month and what the witnesses testified was the present fair rental value, namely $350 or $400 a month. The verdict of $9,600 is the equivalent of the aggregate of $200 a month for forty-eight months.

The main question in the case is whether the separate awards should be added or the one subtracted from the other, rather than to regard the freehold and the leasehold estates as separate properties and compensable as such. Difficult questions of procedure underlie a determination that the two are in fact a unit for purposes of compensation for the taking of the property.

In taking or injuring private property under the power of eminent domain, the condemnor must pay "just compensation" to all persons having ownership interests therein. Sections 13, 242, Kentucky Constitution. It is well established that a lessee's interest is property in the constitutional sense and that he is entitled to compensation for its taking or destruction. 18 Am.Jur., Eminent Domain, Section 232. A leasehold for a term of years is the conveyance of an estate, Cannon v. Carr, 292 Ky. 793, 168 S.W.2d 21, a chattel real, which under our statutes is regarded as personal estate. KRS 446.020 (22). During the existence of the out-standing leasehold, the estate left in the owner of the property is a reversionary interest which will come back into his possession at the expiration of the term. Moore v. Brandenburg, 234 Ky. 400, 28 S.W.2d 477. These are successive interests, but taking the property under eminent domain terminates the lease and the reciprocal obligations thereof. This is the majority view. Note, 3 A.L.R.2d 329. It is consonant with the spirit and intent of our statute, KRS 383.170, providing that where a building is destroyed during the term of a lease by fire or other casualty without fault or neglect of a tenant, he shall not be liable for the rent for the remainder of his term unless he has otherwise contracted.

As stated in a prefatory note, 69 A.L.R. 1263

"The general rule is generally recognized (though not invariably followed) that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or estate as a unit and fix the value thereof or damage thereto separately."

We approved the application of that rule in Korfhage v. Commonwealth, Ky., 296 S.W.2d 476, 477. The appellees submit that the Korfhage case, holding that the value of the lessee's interest should be deducted from the valuation of the property as a whole, is distinguishable, since the evaluations therein were made by arbitrators and were not challenged. In point of principle there is no difference in the cases. Certainly we are not ready to depart from the principle laid down in the Korfhage case. Authorities in addition to those cited in the opinion are: Orgel on Valuation Under Eminent Domain, Section 109;

Nichols on Eminent Domain, Sections 5.23, 12.42; 18 Am.Jur., Eminent Domain, Sections 156, 229, 239; Annotations, 69 A.L.R. 1263; 166 A.L.R. 1211. But Orgel, Sections 108–111, raises the question whether the market value of the whole property is a fair measure of compensation where separately owned interests are taken, e. g., the fee and an easement, and submits that unusual cases may require an exception in either direction—addition or deduction. But we are not concerned here with such conditions of ownership.

We come to questions of admeasurement of the whole and of the respective interests of the lessor and the lessee. In the Korfhage case, supra, we were not concerned with these problems for, as stated, the valuations were accepted.

■■■ *The property as a whole.* Generally, as indicated above, in evaluating property under lease, it is to be treated initially as an unencumbered fee, or as if the title rested in one person. The fair and reasonable market value of the property is the legal standard for measuring compensation. Martin v. Stumbo Elkhorn Coal Co., 216 Ky. 147, 287 S.W. 539. In determining that value every element that can fair.y enter into the question and which an ordinarily prudent person would consider before forming judgment in making a purchase should be considered, including the fact of a lease and its terms, which may be either a burden or an asset. 29 C.J.S. Eminent Domain § 136.

■■■ *The lessee's interest.* The mere proof that a party holds a tenancy in the condemned premises is not sufficient ipso facto to prove he has suffered a compensable loss in consequence of being deprived of his lease. He must prove his loss. In contrast with the number of condemnation proceedings, judicial authority for a method of evaluation is scarce and indefinite. Compensation is generally or summarily stated to be the market value of the leasehold. But market value is an unsatisfactory test because rarely has a

lease any salable value. 1 Nichols, The Law of Eminent Domain, Sections 222, 233. "The right of which a tenant is deprived and for which he is entitled to full compensation is the right to remain in undisturbed possession to the end of the term; and the loss resulting from a deprivation of this right is what he is entitled to recover." 18 Am.Jur., Eminent Domain, Section 296. On the other hand, the lease may be an undesirable contract or a mere liability to pay rent and the lessee would be happy to get rid of it.

An approved method of fixing the recoverable compensation for the leasehold taken is to ascertain the present fair rental value, compare it with the rent stipulated in the contract and allow the aggregate difference for the period of the unexpired term of the lease. Orgel, Section 126; New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J.Super. 309, 123 A.2d 25; Notes, 3 A.L.R.2d 292. The court in Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 95, 3 A.L.R.2d 270 (considering the subject extensively) quoted the statement it had made in Des Moines Wet Wash Laundry v. City of Des Moines, 197 Iowa 1082, 198 N.W. 486, 34 A.L.R. 1517, that, "Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration." See Notes, 3 A.L.R.2d 301 et seq. This court has considered the stated formula to be a simple and certain method to ascertain damages where possession of premises was withheld by a lessor from his lessee. Lawrence v. Fielder, 186 Ky. 324, 216 S.W. 1068.

It would appear that the true or more accurate measure of compensation would be to commute to present worth the aggregate difference between what would be paid and what is the reasonable value of the lease for the unexpired term, because the lessee is presently receiving what he would otherwise be entitled to receive periodically in the future; i.e., the difference that would accrue from month.

to month as time went along until the lease expired by its terms. In this case it is $200 a month for forty-eight months. But we are not aware of any opinion where such formula was considered, and we are reluctant to introduce an innovation and add further complication to an already complicated problem. So, we adhere to the usually accepted method of computing value.

We come to the procedure.

There is much authority for having the separate interests of a lessor and lessee disregarded in the trial of the condemnation proceeding. This is based on the conception that it is an action in rem and does not deal with persons. In that procedure, when the sum total has been fixed, the respective distributable shares of the parties are ascertained in a collateral or independent action. Nichols, Section 12.-36; Lewis on Eminent Domain, Section 616, p. 1253. In State, By and Through State Highway Commission, v. Burk, 200 Or. 211, 265 P.2d 783, this practice is extensively considered and approved. This seems to be proper in our jurisprudence where the interests of the several parties are of the same character—as tenants in common, as are plaintiffs in this action—and there is an inter se controversy.

■ But the interests of a lessor and lessee are obviously different in character. No contract between the owners of different interests in the land can obligate the condemnor to pay more than the value of the property as a whole. Nor, in the absence of special contract, deprive each of his rightful share. Section 242 of our Constitution declares that municipal and other corporations invested with the privilege of taking private property for public use "shall make just compensation for property taken, injured or destroyed by them." Section 13, a part of our Bill of Rights, declares that no "man's property [shall] be taken or applied to public use without the consent of his representatives, and without just compensation being pre-

viously made to him." This deals with persons. The statute, KRS 94.680 et seq., prescribes that the proceeding shall be commenced in the circuit court "against all persons having an interest in the property" and that the "owners of two or more different properties sought to be condemned for the same purpose may be proceeded against in a single action, or the owners of any piece of property may be proceeded against in a separate action." Thus our Constitution looks to compensation of persons. In Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 30 S.Ct. 459, 460, 54 L.Ed. 725, where one party owned the fee, another an easement of way, light and air over the land, and another party held a mortgage thereon subject to the easement, Justice Holmes wrote:

"* * * But the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained? * * *"

■ Our Constitution, Section 242, plainly says that the damage for the property taken for public use shall be assessed by a jury according to the course of the common law, which is by unanimous verdict. Harlan County v. Cole, 218 Ky. 819, 292 S.W. 501. The statutes are in accord. Therefore, it would not be proper or right for the court independently of a jury to divide a single award where multiple claims rest upon different estates. We conclude therefore, that the compensation of the lessor and the lessee, respectively, must be fixed by a jury.

While the jury in the trial of this case did find separate values, we do not think it fair and proper merely to reverse the

judgment and direct that the award to the lessee be deducted from the award to the lessor owners. The jurors apparently did not understand that that would be done. We think the ends of justice will be better accomplished by remanding the case for another trial. To that end, it seems appropriate to outline our views with respect to the instructions.

It seems to us that the jury should first fix the fair market value of the property as a whole as between the condemnor and all the defendants, and then divide the same according to the respective rights of lessors and the lessee. Lambert v. Giffin, 257 Ill. 152, 100 N.E. 496.

*1.* There should be an instruction in the usual form to find the market value of the property as a whole as of the date of the filing of the complaint.

*2.* On the first trial the court gave the following instruction as to the lessee's compensation, namely:

"The jury will find for the defendant, Mae Spriggs, the fair and reasonable value of the unexpired portion of the lease described in the evidence, and the measure of damages for the taking of the leasehold interest is the difference, if any, between the fair rental value of the property for the remainder of the term, and the rental reserved in the lease to be paid by her."

The absence of reference to market value will be noted. We think the simple statement of "fair and reasonable value" is all right for what the evidence showed to be an advantageous contract which had become more valuable by reason of the good will and profitable business the lessee had built up on the premises. As stated in a summary note, 3 A.L.R.2d 289:

"There is strong reason for taking the view that the intrinsic or actual value of the leasehold is the best available test to determine damages to the lessee, as in other instances where a

property interest which is not commonly bought and sold on the market is taken or damaged."

*3.* Another instruction should be given to find for the landowners the difference between the valuation of the property as a whole, as above outlined, and the valuation of the lessee's interest as found under the second instruction.

*4.* The jury should be instructed that their verdict must be unanimous.

If the court should deem it simpler to require a special verdict, the above views will serve as a guide in framing the interrogatories.

The judgment is reversed for consistent proceedings.